IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REALITY KATS, LLC, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>MIRSYL, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-06957-CW<br><br>ORDER DENYING PLAINTIFFS' MOTION TO DISMISS ACTION WITHOUT PREJUDICE AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Dkt. Nos. 43, 45) |

Before the Court are two dispositive motions. On January 29, 2018, Plaintiffs Reality Kats, LLC and Dennis Simpson moved to dismiss this action voluntarily, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2). Defendants Mirsyl, Inc., David P. Lennon, and Novato Development, LLC oppose this motion. On February 8, 2018, Defendants moved for summary judgment against Plaintiffs. Plaintiffs filed an opposition to this motion and Defendants filed a reply. On March 27, 2018, the parties appeared for a hearing on these motions. Having considered the papers and the arguments of counsel, the Court DENIES Plaintiffs' motion to dismiss this action without prejudice and GRANTS Defendants' motion for summary judgment.

BACKGROUND

I. Sale of Novato Development

Reality Kats is a limited liability company engaged in real estate development. Declaration of David P. Lennon (Lennon Decl.) ¶ 3; see also id., Ex. C at 16:1-25. Simpson is the manager of Reality Kats. Id.

Novato Development is a real estate development company which owns a residential development project in Novato, California. Id. ¶ 2. Simpson and Jeffrey Hoyal owned Novato Development and were partners in several other businesses. Id. ¶ 5.

In 2015, Simpson and Hoyal's relationship fell apart. Id. ¶ 6. They agreed to dissolve their various joint ventures. Id. They decided to sell Novato Development to Lennon for $3 million. Id.; see also Lennon Decl., Ex. D (Purchase Agreement). At that time, Reality Kats owned forty-three percent of Novato Development, Simpson owned seven percent, and Crater Lake Trust (a trust with Hoyal as trustee) owned fifty percent. Purchase Agreement at 1. Lennon formed Mirsyl to purchase Novato Development from Reality Kats, Simpson, and Crater Lake Trust. Lennon Decl. ¶ 9.

Because Lennon had previously represented Simpson, Reality Kats, Hoyal, Crater Lake Trust, and Novato Development as their attorney, Lennon advised them orally and in writing that he could not act as their attorney in conjunction with the sale of Novato Development. On November 2, 2015, Lennon sent an email to Simpson and Hoyal stating:

> As I have already advised, since I have previously represented both of you personally as your attorney, as well as the various owners of Novato Development and Novato Development itself, I cannot act as your attorneys in connection with this transaction. Accordingly, it is necessary for each of you to have your own attorneys review and approve these documents on your behalf.

Lennon Decl., Ex. F (11/2/15 Letter). Plaintiffs in fact engaged William J. Braun, Esq. to represent them in the sale of Novato

2

Development. Lennon Decl., Exs. G and H.[1]

On or about November 5, 2015, the parties executed the sale, which was memorialized in a Purchase Agreement. Id. ¶ 10; see also Purchase Agreement at 1. Mirsyl paid the purchase price by executing a promissory note in the amount of that price, payable in monthly installments to Reality Kats. Lennon Decl. ¶ 11, see also id., Ex. I (Promissory Note) at 2. In conjunction with the sale of Novato Development, Reality Kats also extended a $500,000 line of credit to Mirsyl, by way of promissory note, to facilitate further development of the property, which was executed as a promissory note. Lennon Decl. ¶ 12, see also Promissory Note at 1. Both promissory notes used Mirsyl's ownership interest in Novato Development as collateral, as governed by a Pledge Agreement. Lennon Decl., Ex. J (Pledge Agreement).

II. This Lawsuit

On November 2, 2016, Plaintiff filed this suit in Marin Superior Court, alleging claims for: (1) fraud; (2) legal malpractice - constructive fraud; (3) legal malpractice - dual representation of adverse interests; (4) breach of fiduciary duty arising out of the attorney-client relationship; (5) member's derivative action; and (6) restitution/constructive trust/equitable lien. Docket No. 1., Ex. A. At the same time, Plaintiffs filed a notice of pending action with the Marin County

---

[1] Hoyal, who is not a plaintiff, decided to represent himself in the transaction because he had an LLM in tax. See Declaration of David P. Lennon in Support of Opposition to Motion to Dismiss (Lennon Opp. Decl.) ¶ 11. Hoyal executed an acknowledgment that he had been strongly advised not to do so and that Lennon did not represent him or his entities in the transaction. Id., Ex. G.

3

clerk, creating a cloud on Novato Development's title. Lennon Opp. Decl., Ex. K. On December 2, 2016, Defendants removed this action to federal court. Docket No. 1.

LEGAL STANDARD

III. Federal Rule of Civil Procedure 41(a)(2)

Under Federal Rule of Civil Procedure 41(a)(1), a plaintiff "may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Otherwise, a plaintiff must seek a court order dismissing an action "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." Id.

"In ruling on a motion for voluntary dismissal, the District Court must consider whether the defendant will suffer some plain legal prejudice as a result of the dismissal." Hamilton v. Firestone Tire & Rubber Co., 679 F.2d 143, 145 (9th Cir. 1982). The decision of whether to grant a voluntary dismissal is "addressed to the sound discretion of the district court." Id. Plain legal prejudice does not necessarily result simply because a defendant faces the prospect of a second lawsuit or a plaintiff gains some tactical advantage. Id. Factors that may be considered in determining whether there is legal prejudice include: whether "it would be inequitable or prejudicial to defendant to allow plaintiff to refile the action," whether

4

1  "plaintiff waited until the defendant is on the verge of triumph to move for a Rule 41(a)(2) dismissal," "the defendant's effort and expense in preparing for trial," "excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action," and "insufficient explanation of the need to take a dismissal." Williams v. Peralta Cmty. Coll. Dist., 227 F.R.D. 538, 540 (N.D. Cal. 2005).

IV. Federal Rule of Civil Procedure 56

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

6

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

DISCUSSION

I. Motion to Dismiss Without Prejudice

Plaintiffs move for a court order authorizing voluntary dismissal of their suit, alleging that they wish to consolidate this suit with another litigation pending against Lennon and Hoyal in the state of Oregon. Motion at 4. Plaintiffs argue that, because the events that gave rise to the instant action and the Oregon action all took place in Oregon, and most of the witnesses and attorneys reside in Oregon, "it promotes judicial efficiency and reduces the burden on all parties to have all claims between Plaintiffs," Lennon and Hoyal "adjudicated in a single proceeding in Oregon." Id. Plaintiffs did not provide the case information of the Oregon state court action in their papers. At the hearing, Plaintiffs' counsel stated he was not counsel of record in the Oregon state court action and was not familiar with the any of the details of the Oregon state court action, such as the case title, case number, parties involved, claims implicated, or case status.

Defendants point out that there is no Oregon state court action brought by Plaintiffs against Defendants that is currently pending. In fact, on January 29, 2018, the same day that Plaintiffs filed their motion to dismiss, Plaintiffs voluntarily dismissed what appears to be the only Oregon state court action

7

that was pending against Lennon at that time.[2] See Reality Kats LLC v. David Lennon, Jody Lennon, Case No. 17CV05360 (Jackson Sup. Ct. Feb. 7, 2017) (Oregon state court action). The docket shows that Plaintiffs voluntarily dismissed the action without prejudice on the eve of trial, which was scheduled for February 13, 2018, and while motions for summary judgment, sanctions, and abatement were pending. Plaintiffs misrepresented their intent to consolidate this action with the Oregon state court action and thus have not shown sufficient reason for dismissal without prejudice. Williams, 227 F.R.D. at 540.

Over the course of nine months, Plaintiffs commenced five different proceedings against Lennon, in four different forums and three different states, many involving the same set of facts asserted here. Id. ¶¶ 17, 30. Defendants allege that some of these proceedings, such as a complaint with the Oregon state bar regarding the same facts alleged here, were resolved in Defendants' favor, while others, such as the Oregon state court action, were voluntarily dismissed by Plaintiffs. Opp. to Motion to Dismiss (MTD) at 8-13; Lennon Opp. Decl., Ex. N (Oregon state bar decision). Defendants allege that Plaintiffs brought this "campaign of frivolous litigation," not because they want adjudication on the merits, but because they want to litigate Defendants into the ground so that they will default on their promissory notes and return the properties purchased, without a

---

[2] In Defendants' Updated Case Management Statement, Defendants provide information for a number of cases brought by Plaintiffs, including Premier Trust of Nevada, Inc. and Simpson v. Hoyal, Case No. 17CV21456 (Jackson Sup. Ct. May 25, 2017), an Oregon state court action that is still pending. Defendants are not parties to that case, however.

8

fight. Opp. to MTD at 2-3; Lennon Opp. Decl., Ex. T (email from Simpson's CPA to Simpson speculating that Lennon might not have "very much money to fight a lawsuit unless they sell assets" and that he "might just return ownership to Novato to you without a fight").

There is also evidence that Plaintiffs filed for voluntary dismissal in this case to avoid an adverse ruling. See Batuhan v. Assurity Financial Services, LLC, et al., Case No. 15-cv-4526-WHO, Docket No. 50 (a court "may consider whether the plaintiff is requesting a voluntary dismissal only to avoid a near-certain adverse ruling."). On January 11, 2018, Defendants emailed Plaintiffs asking them to confirm that they are "no longer advocating in this action that [Lennon] represented plaintiffs in connection with the Novato Development transaction." Lennon Opp. Decl., Ex. P at 1. Defendants followed up on this request several times. Id. at 2-5. On January 16, 2018, Plaintiffs stated that they "expect[ed] to apply to dismiss the pending action without prejudice." Id. at 6. Defendants followed up again but received no response. Id. On January 24, 2018, Defendants emailed Plaintiffs stating that the summary judgment deadline was imminent and that they intended to move for summary judgment on all of Plaintiffs' claims related to the issue of Lennon's alleged representation of Plaintiffs in connection with the Novato Development transaction. Id. at 10. On January 26, 2018, Plaintiffs stated that they were authorized to file a motion to dismiss without prejudice. Id. A few days later, on January 29, 2018, Plaintiffs filed their motion to dismiss, asserting falsely that they intended to join their claims here

9

with the Oregon state court action. Plaintiffs' correspondence indicates that they began considering voluntary dismissal of this action only after Defendants indicated that they intended to move for summary judgment on an issue they do not dispute, that Lennon did not actually represent Plaintiffs in connection with the Novato Development transaction.[3] Thus, dismissal would allow Plaintiffs again to avoid adjudication on the merits of their claim and enable them to bring another action against Defendants in another forum.

In sum, because several factors demonstrate that Defendants will suffer legal prejudice if this action is voluntarily dismissed, Plaintiffs' motion must be denied. Accordingly, the Court proceeds to consider the merits of Defendants' motion for summary judgment.

II. Motion for Summary Judgment

Plaintiffs fail completely to rebut the substantive arguments of Defendants' motion for summary judgment. Instead, they concede what they call the "single factual premise" of Defendants' motion -- "that Plaintiffs were not represented by Defendant David Lennon in the sale of Novato Development" -- and advocate that the Court enter partial summary judgment on this limited issue rather than on the entirety of Plaintiffs' claims. Opp. to Motion for Summary Judgment (MSJ) at 2. Plaintiffs request that the order "specifically preserve claims not currently pled in the California action and specifically preserve

---

[3] At the hearing, Plaintiffs' counsel confirmed that he had known that Defendants did not represent Plaintiffs in connection with the Novato Development sale since the parties attended mediation in August 2017.

10

claims that may be brought in the Oregon court." Id. Plaintiffs contend that this is justified because "additional facts have surfaced" indicating a "broader pattern of misconduct" by Lennon, Hoyal, and others, but provide no specific evidence to support this allegation. Id. This does not excuse Plaintiffs' complete failure to oppose the motion for summary judgment. Nor does it excuse Plaintiffs' failure to conduct any discovery in this case to develop their claims. In any event, Plaintiffs are mistaken in arguing that Defendants' motion is based on a single factual premise. As explained below, Defendants have shown an absence of evidence to support Plaintiffs' case on each and every claim, shifting the burden to Plaintiffs to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409. Because Plaintiffs have not done so,[4] summary judgment is warranted on all claims.

A. Fraud

Plaintiffs' first cause of action contains two allegations of fraud: (1) the balance sheet misrepresented Novato Development's assets and liabilities and (2) Lennon conspired with others to create a "sham sale" of seventeen lots owned by Novato Development to a third party, Rudnick Estates Realty

---

[4] Plaintiffs claim that they could not adequately respond to the motion for summary judgment because they did not know whether the Court would consider their motion to dismiss and thus their time to respond was "shortened." This does not provide an excuse for not responding to a pending summary judgment motion, which is required to be filed within fourteen days of filing the motion by Civil Local Rule 7-3, unless otherwise ordered by the Court. If Plaintiffs felt they needed more time to respond, they could have sought an extension of time pursuant to Civil Local Rule 6-1. In any event, Plaintiffs inexplicably filed their opposition twelve days late, undermining their argument that they did not have time to form an adequate response.

11

Group, Inc. (Rudnick).

The Purchase Agreement provides that the "Agreement shall be construed in accordance with, and shall be governed by, the laws of the State of Oregon." Purchase Agreement at 4, 10.d. Under Oregon law, the elements of fraud are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury." Conzelmann v. Nw. Poultry & Dairy Prod. Co., 190 Or. 332, 350 (1950). A plaintiff must prove a fraud claim by "clear and convincing" evidence, which is a higher standard than a mere preponderance of the evidence. Riley Hill Gen. Contractor, Inc. v. Tandy Corp., 303 Or. 390, 402 (1987).

Defendants point out that Plaintiffs have not adequately alleged that Defendants made any misrepresentation. With respect to the first allegation of fraud, it was Plaintiffs, not Defendants, who made representations about the assets and liabilities of Novato Development. Section 5 states:

> 5. Seller hereby represents and warrants to Buyer, and covenants to Buyer, as follows . . .
>
> i. The Balance Sheet annexed hereto as Exhibit "D" materially represents the current assets and liabilities of the company as of the Effective Date.

Thus, Plaintiffs cannot show that this was a misrepresentation made by Defendants.

Regarding the second allegation of fraud, Plaintiffs have

12

not identified a representation. A transaction between Novato Development and Rudnick is not, in and of itself, a representation. Accordingly, Plaintiffs have not met their burden of showing a disputed issue of fact with respect to their fraud claim.

B. Legal malpractice, dual representation of adverse interests, and breach of fiduciary duty

Plaintiffs' second, third, and fourth causes of action all rely on their allegation that Lennon represented Plaintiffs as an attorney in connection with the sale of Novato Development. See Complaint ¶ 33 (alleging reasonable reliance given "their attorney-client relationship); ¶¶ 39, 41 (alleging Lennon "was representing plaintiffs in the aforementioned matter" and "failed to disclose the areas of potential conflict" between Mirsyl and Plaintiffs); ¶ 45 (alleging breach of fiduciary duty based on an "attorney-client relationship that existed between defendant Lennon and plaintiffs"). Because Plaintiffs have already conceded that Lennon did not represent Plaintiffs in connection with the sale of Novato Development, these claims must fail.

C. Derivative action

Plaintiffs' fifth cause of action is a member derivative action that alleges that Novato Development's assets were undervalued. Defendants contend that Plaintiffs failed to make the requisite demand and that they lack standing to bring this claim. Defendants are correct that Plaintiffs have not alleged that they made a demand on Mirsyl, the only member of Novato Development, or Lennon, the manager. While Plaintiffs alleged it was futile to make a demand on Hoyal, Hoyal resigned as a manager

13

almost a year prior to this suit, on November 5, 2015.  Lennon Decl., Ex. L.  In addition, Plaintiffs cannot show that they have standing to bring a derivative action because they sold their ownership interest in Novato Development as a result of the Purchase Agreement.  Quinn v. Anvil Corp., 620 F.3d 1005, 1012 (9th Cir. 2010) (the "continuous ownership requirement" provides that "[i]f a shareholder is divested of his or her shares during the pendency of litigation, that shareholder loses standing").

D.   Restitution/constructive trust/equitable lien

Plaintiffs' sixth cause of action for restitution/constructive trust/equitable lien alleges that Defendants wrongfully acquired Novato Development, requiring imposition of a constructive trust in favor of Plaintiffs in order to prevent unjust enrichment of Defendants.  Complaint ¶¶ 56-58.  This is an equitable remedy rather than a substantive right.  Barnes v. E. & W. Lumber Co., 205 Or. 553, 596–97 (1955).  This claim does not stand on its own but, rather, depends on the other causes of action.  Because those claims fail, this claim, too, must fail.

E.   Attorneys' fees

Defendants conterclaimed for attorneys' fees pursuant to a clause in the Pledge Agreement stating that a party is entitled to attorneys' fees necessary to enforce the Agreement.  Plaintiffs oppose Defendants' request for attorneys' fees, contesting that this action falls within the purview of the Pledge Agreement's attorneys' fees clause.  In Defendants' reply brief, they represent that they will make a separate motion for fees after the Court rules on the present motions, pursuant to

14

Federal Rule of Civil Procedure 54.  At the hearing, Defendants agreed to dismiss their counterclaim without prejudice so that the Court could enter judgment.  Defendants reserve the right to bring a motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 54.  Accordingly, Defendants' counterclaim is dismissed without prejudice.

CONCLUSION

The Court DENIES Plaintiffs' motion to dismiss without prejudice (Docket No. 43) and GRANTS Defendants' motion for summary judgment (Docket No. 45) as to all Plaintiffs' claims.  Defendants' counterclaim is dismissed without prejudice.  The Clerk of the Court shall enter judgment in favor of Defendants, who shall recover their costs from Plaintiffs.

IT IS SO ORDERED.

Dated: March 29, 2018

CLAUDIA WILKEN
United States District Judge